IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KAHLIL LEWIS, | § | |
| | § | No. 122/123, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID Nos. 1111020024 & |
| STATE OF DELAWARE, | § | 1304026571 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: July 13, 2016
Decided: August 4, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon Appeal from the Superior Court of the State of Delaware: **AFFIRMED**.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Natalie, P.A., Wilmington, Delaware, for Defendant Below, Appellant, Kahlil Lewis.

Andrew J. Vella, Esquire, Department of Justice, Wilmington, Delaware, for Plaintiff Below, Appellee, State of Delaware.

**SEITZ**, Justice:

# I.    Introduction

In this appeal we must determine whether the Grand Jury properly indicted the defendant for a crime under a criminal statute mistakenly repealed by the General Assembly.  The appellant, Kahlil Lewis, argues that the Grand Jury improperly indicted him for an additional crime as part of a renewed indictment incorporating earlier charges because the General Assembly repealed the statute covering the added crime before he was re-indicted.  The General Assembly discovered the mistake but did not re-enact the repealed subsection until after the re-indictment.

We hold, consistent with decisions interpreting a similar federal saving statute, that Delaware's criminal saving statute permits the State to prosecute crimes under a repealed criminal statute when the crimes were committed before the statute's repeal.  Because Lewis committed the crime before the statute was repealed, he was still subject to prosecution under the later repealed statute.  Lewis also raises other arguments on appeal that we address below.  We find all of his arguments to be without merit, and affirm.

# II.    Facts And Procedural Background

On April 27, 2013, Lewis drove to the 600 block of Jefferson Street in Wilmington in search of people who attacked his friend the day before.  When he arrived, Lewis found several adults and children hanging around the street.  Words were exchanged, and shots were fired.  During the exchange of gunfire, one of the people on the street, Toney Morgan, was shot dead.  Witnesses claimed they saw Lewis shoot Morgan.  Lewis was also shot in the face, though it was never established who shot him.

1

On June 24, 2013, the Grand Jury indicted Lewis on charges of second degree murder, two counts of possession of a firearm during the commission of a felony, first degree reckless endangering, and possession of a firearm by a person prohibited. On December 18, 2013, the State filed an information charging Lewis with an additional crime, possession of a firearm by a person prohibited—negligently causing death, a violation of 11 *Del. C.* § 1448(e)(2). On December 23, 2013, the Grand Jury re-indicted Lewis. The re-indictment repeated the charges in the original indictment, and added the new charge under § 1448(e)(2).

Unknown to the State or Lewis, the General Assembly mistakenly repealed § 1448(e)(2) on July 18, 2013. It appears that when it amended parts of the previous subsection of § 1448, the General Assembly inadvertently struck the language of § 1448(e)(2) and then enacted the bill. Thus, although a violation of § 1448(e)(2) was a crime when the April 27, 2013 shooting and death occurred and when the Grand Jury first indicted Lewis on June 23, 2013, it was not a crime in December 2013 when the State filed the information and the Grand Jury re-indicted Lewis and included the new charge. The General Assembly re-enacted § 1448(e)(2) on January 30, 2014, noting that it had been mistakenly repealed.[1]

Lewis went to trial in January 2014. The State pursued only the reckless endangering, possession of a firearm during the commission of a felony, and the § 1448(e)(2) charges. The State previously entered a *nolle prosequi* on the other charges,

---

[1] *Synopsis*, H.B. 225, 147th Gen. Assemb. (Del. 2014).

including the second degree murder charge. The jury convicted Lewis of violating § 1448(e)(2) and acquitted him of the other charges.

In March 2014, while waiting for the court to rule on a motion for judgment of acquittal, Lewis sent a letter directly to the court that raised for the first time whether the repeal of § 1448(e)(2) affected the re-indictment. The Superior Court denied Lewis' motion for judgment of acquittal on June 18, 2014. In so doing, the court held that the repeal of § 1448(e)(2) had no bearing on Lewis' case because Delaware's criminal saving statute, 11 *Del. C.* § 211(a), applied and allowed the State to prosecute Lewis under a statute repealed at the time of the re-indictment. The court sentenced Lewis to 25 years at level 5, suspended after 7 years.

### III.    Standard Of Review

Questions of statutory construction at issue in this case are issues of law and reviewed *de novo*.[2] We review claims of error not properly preserved in the trial court for plain error.[3] We review the sentencing of a criminal defendant for abuse of discretion.[4]

### IV.    Discussion

Lewis raises four arguments on appeal. First, he argues the Superior Court should have dismissed the § 1448(e)(2) charge in the December 2013 re-indictment because § 1448(e)(2) was repealed at the time of the re-indictment, and he suffered prejudice as a

---

[2] *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 427 (Del. 2010).
[3] *Small v. State*, 51 A.3d 452, 456 (Del. 2012).
[4] *Fink v. State*, 817 A.2d 781, 790 (Del. 2003).

result of having the charge added so close to trial. Second, Lewis contends that the Superior Court should not have admitted evidence of his prior felony drug conviction and referred to the conviction in the jury instructions. Third, he argues the court should have given a self-defense jury instruction. And finally, Lewis argues that the Superior Court abused its discretion because it sentenced him with a "closed mind" and thus was biased against him. We address these contentions in turn.

### a. The Delaware Criminal Saving Statute Allowed The State To Indict Lewis For A Violation Of § 1448(e)(2)

Lewis first argues that he was not properly indicted for possession of a deadly weapon by a person prohibited—negligently causing death because at the time of the re-indictment, § 1448(e)(2) had been repealed, the criminal saving statute did not apply, and he suffered prejudice when the State added the charge two weeks before his trial. Lewis' argument relies mainly on the common law rule that, absent a saving statute, the repeal of a criminal statute voids all prosecutions under it that have not attained final judgments.[5] For its part, the State argues that the criminal saving statute applied and authorized the State to indict Lewis for a crime committed before repeal of the criminal statute.

The criminal saving statute, 11 *Del. C.* § 211(a), provides as follows:

(a)   The repeal of any statute creating, defining or relating to any criminal offense set forth under the laws of this State, shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as remaining in full force and

---

[5] *Williams v. State*, 756 A.2d 349, 353 (Del. 2000); *Angelini v. Court of Common Pleas*, 205 A.2d 174, 175 (Del. 1964) ("[W]here a criminal statute is repealed and there is no express or implied saving clause, all actions which have not attained final judgment are to be terminated.").

4

effect for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

(b)　Any action, case, prosecution, trial or other legal proceeding in progress under or pursuant to any statute relating to any criminal offense set forth under the laws of this State shall be preserved and shall not become illegal or terminated in the event that such statute is later amended by the General Assembly, irrespective of the stage of such proceeding, unless the amending act expressly provides to the contrary. For the purposes of such proceedings, the prior law shall remain in full force and effect.

The Superior Court rejected Lewis' argument and noted that under § 211(a), if a statute is repealed without express language to the contrary, it "shall be treated as remaining in full force and effect for the purpose of sustaining any proper action or prosecution . . . ." According to the Superior Court, § 211(a) means that a repealed criminal statute, absent contrary language, remains in force for purposes of pre-repeal violations, provided that the State invokes the saving statute to "sustain"—in the sense of "furthering"—an existing prosecution. The court believed that the critical question was not whether a prosecution was ongoing under the later repealed statute, but instead whether *any* prosecution had been commenced while the repealed statute was still in force. Because there was already a prosecution against Lewis pending at least from June 2013, the Superior Court found that the § 1448(e)(2) charge "sustained" or furthered that original prosecution and was therefore proper.

We disagree with the Superior Court's interpretation of the saving statute because it fails to account for important qualifying language in § 211(a). Even if we accept the Superior Court's premise that new prosecutions are prohibited once a statute has been repealed—a premise we reject below—section 211(a) states that the repealed statute

5

"shall be treated as remaining in full force and effect for the purpose of sustaining any proper action or prosecution *for the enforcement of [that statute]*." In other words, according to the express wording of the statute, the "prosecution" being "sustained" must be an existing prosecution under the later-repealed statute, not simply any prosecution for crimes related or unrelated to the later-repealed statute. Because the State did not originally bring charges against Lewis under the later-repealed statute, the Superior Court misconstrued the saving statute when it held that Lewis' original prosecution could support a later prosecution under the repealed statute.

Although the Superior Court misinterpreted the saving statute, in the end it reached the right result. We have not addressed before whether Delaware's criminal saving statute allows the State to charge a defendant under a repealed statute for a crime that occurred before repeal. To answer the question we look to what the General Assembly intended when it used the word "sustain" when referring to a prosecution under the saving statute.

Fortunately, we have a legislative expression of intent behind the saving statute. In enacting the statute, the General Assembly intended that "legislative revision to the criminal code . . . not have the unintended consequence of repealing an existing law, thus ending a prosecution for conduct which occurred prior to the repeal."[6] In other words, the General Assembly intended that criminal liability, once incurred under an existing statute, not be extinguished by repeal absent an explicit legislative statement to the

---

[6] *Synopsis*, H.B. 277, 139th Gen. Assemb. (Del. 1998).

6

contrary. Although the General Assembly spoke in terms of "ending a prosecution," commentators have noted that saving statutes are intended to "alleviate the hardships and to rectify the injustices of the common-law rules of construction as they relate to the effect of the repeal of a statute," and "continue repealed statutes with respect to past activity and pending legal actions."[7] Thus, consistent with the foregoing, we interpret the words "sustaining any proper action or prosecution" to include prosecutions for crimes committed before a criminal statute is repealed, regardless of the timing of the information or indictment.[8]

Our interpretation of Delaware's saving statute is supported by the federal savings statute. Delaware's saving statute was "modeled in part upon federal law."[9] The federal statute, 1 U.S.C.A. § 109, provides as follows:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

Federal courts have held that "to sustain" a prosecution under the federal saving statute includes the right to bring a new action to enforce criminal liability that occurred while a repealed statute was in force.[10]

---

[7] 1A SUTHERLAND STATUTORY CONSTRUCTION § 23:38 (7th ed.).

[8] Our interpretation of the saving statute does not open the door to limitless prosecutions for repealed crimes. For most crimes the statute of limitations will close the door on future prosecutions. *See* 11 *Del. C.* § 205.

[9] *Synopsis*, H.B. 277, 139th Gen. Assemb. (Del. 1998).

[10] *See Dorsey v. United States*, 132 S. Ct. 2321, 2331 (2012) ("Case law . . . makes clear that penalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.,* commits the underlying conduct that makes the offender liable."); *United States v. Reisinger*, 128

Accordingly, under § 211(a), the State could indict Lewis for violating § 1448(e)(2) because the crime was committed before repeal of the statute. The timing of the indictment, and the General Assembly's mistaken repeal, did not impact the validity of the indictment.

Lewis also contends that the Grand Jury's re-indictment two weeks before trial caused him prejudice. Because the argument was not raised below, we review the issue of prejudice for plain error. For error to be plain, it must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[11] In addition, "the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[12]

To support his position, Lewis cites Superior Court Criminal Rule 7(e):

---

U.S. 398, 402 (1888) (holding that prosecution for repealed statute that commenced after statute's repeal was valid by operation of § 109); *United States v. Jackson*, 468 F.2d 1388, 1389 (8th Cir. 1972) (indictment bringing charges under statute repealed after commission of the crime but before return of the indictment was not void under the plain language of the federal saving statute); *United States v. Brown*, 429 F.2d 566, 568 (5th Cir. 1970) ("[T]he saving clause allows prosecution under the [repealed] statute, and the date on which the indictment was returned is not relevant to this inquiry."); *United States v. Auerbach*, 68 F. Supp. 776, 779 (S.D. Cal. 1946) (rejecting the contention that "sustain" requires that there be an existing prosecution); *see also* 1A SUTHERLAND STATUTORY CONSTRUCTION § 23:38 (7th ed.) ("Where a statute is repealed, a general saving statute saves any [liability] which accrued under the repealed statute. Consequently, any action predicated upon the repealed statute may be *commenced* and prosecuted to conclusion under the provisions of the repealed act." (emphasis added)).
[11] *Small*, 51 A.3d at 456 (citing *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).
[12] *Id.*

> The court may permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

As is plain from its wording, Rule 7(e) only applies to amendments of an information or indictment granted by the court, not a re-indictment by a Grand Jury. Here, the Superior Court did not permit amendment of Lewis' indictment. If Lewis believed he would be prejudiced by having to defend the § 1448(e)(2) charge added shortly before trial, his remedy was to ask for a continuance of the trial, which he did not. Therefore, the Superior Court did not plainly err, and Lewis was properly re-indicted and convicted under § 1448(e)(2).

### b. Lewis' Prior Felony Conviction Was Properly Admitted

Lewis argues that during cross-examination by the State, the State should not have questioned him about his prior felony drug conviction. Lewis also contends that the prosecutor should not have referenced his conviction in closing argument, and the Superior Court should not have included it in the jury instructions. Because Lewis did not object to any of these instances of alleged error, once again our review is for plain error.[13]

Lewis points to three references to his prior felony conviction made during trial. The first reference occurred during cross-examination by the State:

> Q. You're a convicted felon; correct?
> A. Yes, I am.
> Q. And you were convicted in Delaware in 2012 of drug dealing; right?
> A. Yeah, that's a funny thing.

---

[13] *Id.*

Q. But, yes or no, you were convicted of drug dealing in 2012.
A. Yeah.
You're familiar with your law though, right? You know that they changed the law in 2008 that if you get caught with one bag of weed or more than one bag of weed, they charge you—
THE COURT: Mr. Lewis, please. Mr. Lewis, just answer the question so we don't take more time than we need—
THE WITNESS: But it sounds worse that it is, Your Honor, because I only got caught with probably like five bags for use.
THE COURT: Next question, please.[14]

The second reference to the 2012 conviction occurred when, during closing arguments, the prosecutor stated that Lewis was "a convicted drug dealer, which prohibits him from possessing a firearm."[15] Finally, the third reference was in the jury instructions, in which the court reiterated that Lewis had been convicted of possession with intent to deliver heroin in 2012.[16]

The Superior Court did not plainly err by allowing reference to Lewis' prior drug conviction. As a convicted drug dealer, Lewis was a person prohibited from possessing a firearm.[17] His conviction for drug dealing was an element of the crime and thus the jury was entitled to hear the evidence.[18] Further, because Lewis elected to testify, his credibility could be impeached under Delaware Rule of Evidence 609 by reference to

---

[14] App. to Opening Br. at 239.
[15] *Id.* at 253.
[16] *Id.* at 279.
[17] 11 *Del. C.* § 1448(e)(2) ("Any person who is a prohibited person . . . *because of a conviction for a violent felony* and who, while in possession or control of a firearm in violation of this section, negligently causes . . . the death of another person through the use of such firearm, shall be guilty of a class B felony . . . ." (emphasis added)). Drug dealing is considered a violent felony. *See* 11 *Del. C.* § 1448(e)(3); 11 *Del. C.* § 4201(c).
[18] *See* 11 *Del. C.* § 1448(e)(2); *Robinson v. State*, 80 A.3d 961 (Del. 2013) (Table) (citing *United States v. Higdon*, 638 F.3d 233 (3d Cir. 2011)).

prior felony convictions.[19] We have held that, in challenging the credibility of a witness, as happened here, "a cross-examiner may inquire: (1) whether a witness previously has been convicted of a felony or crime of dishonesty; (2) if so, what those crimes were; and (3) where and when those convictions were obtained."[20]

The prosecutor also properly referred to Lewis' drug dealing conviction in closing argument. One of the purposes of closing argument is to sum up the evidence and present the jury with a clear picture of the State's theory of the case; namely, that it has proven each element of the crime beyond a reasonable doubt.[21] Here, because Lewis' status as a person prohibited by reason of his felony conviction was an element of the crime, the prosecutor could properly recite that stipulated fact in his closing argument. The prosecutor did not go beyond this permissible purpose in his closing.[22] Likewise, reiterating that Lewis had stipulated to one of the elements of the crime was not improper considering the court's duty to inform the jury of all of the elements of the crime.[23]

---

[19] *See Desmond v. State*, 654 A.2d 821, 826 (Del. 1994) (holding it was proper for the State to cross-examine testifying defendant about prior convictions for purpose of impeaching his credibility).

[20] *Archie v. State*, 721 A.2d 924, 928 (Del. 1998).

[21] 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1751, Westlaw (updated 2016) ("The opening final argument for the prosecution is intended to permit a statement of the case and of the law and the evidence and to uphold the right to a conviction.").

[22] *Id.* § 1766, Westlaw (updated 2016) ("[T]he prosecuting attorney may allude to the fact that the accused has committed . . . crimes other than that for which he or she is on trial, where evidence supporting the particular reference is properly before the jury, but not otherwise."); App. to Opening Br. at 253 ("[T]he defendant is a convicted drug dealer, which prohibits him from possessing a firearm.").

[23] *See Robinson*, 80 A.3d 961 ("'Although a defendant may, by stipulating that he has a prior felony conviction, prevent the jury from hearing the nature or underlying facts of the conviction, he may not prevent the jury from learning *the fact that he has a prior felony conviction—a 'crucial element' of the offense.*' Thus, 'a [trial] court may not entirely exclude a stipulated fact

Accordingly, the references to Lewis' prior conviction were proper and did not constitute plain error.

### c. The Superior Court Properly Refused A Self-Defense Instruction

Lewis asked for a choice-of-evils instruction before trial, and argued that he did not have a gun just before the shooting but that once he felt his life was threatened by a person with a gun, he wrestled the gun away from that person.[24] The Superior Court agreed with Lewis that a choice-of-evils instruction was appropriate, and gave the instruction. Lewis now claims a self-defense instruction was also appropriate for the § 1448(e)(2) charge. Because the issue was not raised below, we once again review for plain error.

The State charged Lewis with possession of a firearm by a person prohibited—negligently causing death. The elements of the crime are (1) possession of a firearm (2) by a person prohibited and (3) negligently causing the death of another with the firearm.[25] The self-defense doctrine permits the intentional use of force in response to a reasonably

---

from the jury's consideration when that fact constitutes an element of an offense.'" (quoting *Higdon*, 638 F.3d at 242 (emphasis in original)); 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1805, Westlaw (updated 2016) ("Instructions are statements of the law applicable to the facts, and their functions include guiding the jurors and informing them of the law to be applied to the evidence."); *id.* § 1842 ("[I]t is generally within the court's discretion to review and summarize the evidence when it instructs the jury . . . .").

[24] App. to Opening Br. at 39; *see also* 11 *Del. C.* § 463 ("[C]onduct which would otherwise constitute an offense is justifiable when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the defendant, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.").

[25] 11 *Del. C.* § 1448(e)(2).

perceived threat of imminent bodily harm.[26]  The defense therefore requires the conscious perception of a threat and the intentional resort to force.  But negligent homicide requires only negligence—a mental state that involves merely failing to exercise the care of an ordinary prudent person under the circumstances.[27]  It would thus make no sense to say that Lewis both failed to exercise ordinary care resulting in Morgan being shot and at the same time that his intentional shooting of Morgan was justified because it was a response to a threat Lewis reasonably perceived.  As such, the Superior Court correctly declined to give a self-defense instruction for this charge.

### d. The Superior Court Did Not Abuse Its Discretion In Sentencing Lewis

Lewis argues the Superior Court abused its discretion by sentencing him with a closed mind.  He points to various mitigating facts, such as Lewis' traumatic childhood, extreme poverty, and the fact that he was shot during the altercation.  To disturb a sentence on appeal, the defendant must show either that it was an illegal sentence or that it was "based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[28]  "A judge sentences with a

---

[26] 11 *Del. C.* § 464(a) ("The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion.").  *See generally* 2 WHARTON'S CRIMINAL LAW § 127 *Self-defense* (15th ed.).

[27] 11 *Del. C.* § 231(d) ("A person acts with negligence with respect to an element of an offense when the person fails to exercise the standard of care which a reasonable person would observe in the situation.").

[28] *Cruz v. State*, 990 A.2d 409, 416 (Del. 2010) (quoting *Weston v. State*, 832 A.2d 742, 746 (Del. 2003)); *Weber v. State*, 655 A.2d 1219, 1221 (Del. 1995).

closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[29]

Lewis' counsel presented the mitigating facts that he now claims the court ignored. The Superior Court was aware of those factors, but nevertheless believed that a longer sentence was appropriate because of other aggravating circumstances that Lewis now ignores. Specifically, Lewis was on probation at the time of the crime, knew he was not supposed to possess a firearm, and yet did have a firearm and killed Morgan with that firearm.[30] The Superior Court properly exercised its discretion when it found that the aggravating factors outweighed the mitigating factors. Because the sentence imposed was not illegal and Lewis has failed to show how the court was biased or otherwise abused its discretion, his final argument is without merit.

## V. Conclusion

Because Lewis' prosecution and conviction under § 1448(e)(2) were proper, and his other claims of error are without merit, we affirm the judgment of the Superior Court.

---

[29] *Cruz*, 990 A.2d 409 at 416 (quoting *Weston*, 832 A.2d at 746).
[30] App. to Opening Br. at 345–47.